**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)**

| | |
|---|---|
| **BONNIE FAIRBANK** | |
| Plaintiff, | |
| v. | Case No. 4:13-cv-9 |
| **LAW OFFICES OF SHAPIRO BROWN & ALT, LLP,** *et al.* | |
| Defendants. | |

**SBA AND PFC'S MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Shapiro, Brown & Alt, LLP ("SBA") and Professional Foreclosure Corporation of Virginia ("PFC") (collectively, the "Defendants"), by counsel, hereby submit this memorandum in support of their Motion to Dismiss the Complaint filed by Plaintiff Bonnie Fairbank (the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in support thereof, state as follows:

**INTRODUCTION AND BACKGROUND**

SBA is a law firm located in Virginia, which practices in the area of foreclosure law. See Complaint and Demand for Jury Trial, filed January 11, 2013 ("Compl."), at ¶ 4. SBA's clients appoint PFC as trustee to conduct foreclosure sales. See Compl. at ¶ 5. In the course of their business, JPMorgan Chase Bank, National Association ("Chase") hired Defendants to foreclose on Plaintiff's delinquent Note. See Compl., at ¶ 50.[1] Although the majority of the claims against SBA and PFC are brought under the Fair

---

[1] Nowhere in Plaintiff's Complaint does she allege that she was not in default. Rather, she glosses over the fact that she stopped making payments, referencing hardships brought on by a struggling economy. See Compl., at ¶11.

Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§1692, et seq., the Complaint does not involve collection activities such as harassing phone calls or repeated demands for money.  Rather, under the guise of the FDCPA, the Complaint takes issue with the statutory notices and procedures that SBA afforded to Plaintiff, as provided for under Virginia law, prior to foreclosure.  In this case, although Plaintiff alleges that notices of foreclosure sale were sent, see Compl. at ¶35, no foreclosure sale occurred, nor is alleged.

The gravamen of the lawsuit is the allegation that Chase was merely the servicer of the loan and not the creditor or beneficiary of the mortgage loan.  See Complaint filed January 11, 2013, at ¶¶ 9-10 ("Compl.").  Upon this premise, Plaintiff attacks Chase's appointment of PFC as trustee under the deed of trust, see Compl. at ¶¶ 50-53, although it is publicly known that, in 2008, Chase acquired the original lender and deed of trust beneficiary –Washington Mutual Bank – following its collapse.[2]  Plaintiff concedes however, that Chase was also the servicer of her loan.  See Compl. at ¶ 9.  Nevertheless, without factual basis, Plaintiff asserts that Defendants improperly identified Chase as her "creditor" under the FDCPA, and therefore violated its provisions.

Count I of Plaintiff's Complaint asserts that Defendants falsely identified Chase as her current creditor and, accordingly, failed to properly verify the debt in violation of 15 U.S.C. § 1962e.  See Compl., at ¶¶45-46.  Count II argues that, because Chase allegedly lacked authority to appoint Defendants as substitute trustee, Defendants sending of foreclosure notices on Chase's behalf violates 15 U.S.C. §1692f.  See Compl. at ¶¶ 49-

---

[2] The Federal Reserve's institution history for Washington Mutual Bank ("WAMU") confirms that on September 26, 2008, WAMU failed, and its remaining assets were acquired by JP Morgan Chase Bank, National Association.  See http://www.ffiec.gov/nicpubweb/nicweb/InstitutionHistory.aspx?parID_RSSD=1222108&parDT_END=20080925.

52.  Finally, Count III contends that Defendants violated the FDCPA's prohibition on communicating directly with represented debtors when it sent a required foreclosure notice pursuant to Virginia law.  See Compl. at ¶¶ 55-56.[3]  For the reasons that follow, the entirety of Plaintiff's claims must be dismissed with prejudice.

## STANDARD OF REVIEW

A complaint must be dismissed if it fails to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6) )(2012).  Although the Court must accept well-pled allegations in Plaintiff's Complaint as true, it is not required to accept conclusory factual allegations, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged. Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting Associated General Contractors of California v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).  Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); Papason v. Allain, 478 U.S. 265, 286 (1986); J.D. Associates LTD, 213 F.3d 175, 180 (4th Cir. 2000).  "Threadbare recitals of the elements of a cause of action, supported

---

[3]    To the extent that Plaintiff attempts to save any claim as to the 2010 letters from the one-year statute of limitations bar, such attempt fails.  Although not stated outright, in a footnote, Plaintiff avers that the untimely allegations are relevant to whether Defendants participated in an "abusive or harassing pattern" of debt collection.  See Compl. at note. 1.  If Plaintiff's desire is to assert a claim pursuant to 15 U.S.C. § 1692d, she fails miserably.  That provision, which prohibits harassment or abuse, is geared towards eliminating egregious behavior such as threats of violence, profane language or continuous harassing phone calls.  See 15 U.S.C. § 1692d(1)-(6) (2012).  Mailing a total of three letters over a period of two years cannot possibly rise to the level of conduct actionable under §1692d.  The 2010 letters are beyond the statute of limitations and any assertion of an abusive pattern evidenced by them is absurd.

by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.C.t at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

Under Rule 12(b)(6), "a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not due." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumptions that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). But, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should… be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. at 558 (citation omitted). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." Goodrow v. Friedman & Macfadyen, P.A., 2012 U.S. Dist. Lexis 182188 (E.D. Va. Dec. 27, 2012) (internal citations and quotations omitted).

## DISCUSSION

### A.    Chase is, in fact, the owner of the Note.

In her Complaint, Plaintiff admits that Chase was the servicer of her loan, but asserts without legal or factual basis that it was not the owner of her note, see Compl. at

¶10, and "not the current creditor or beneficiary of the Note."  See Compl., at ¶28.[4]  No

facts are alleged to support her assertion.[5]

     Yet, using this premise to bolster her Complaint, Plaintiff asserts violations of

both 15 U.S.C. § 1692e and § 1692f.  She claims Defendants falsely stated Chase was

Plaintiff's current creditor, and, for this reason, falsely advised that Plaintiff's debt was

verified.  See Compl., at ¶¶ 45-46.  Because Chase allegedly did not own her note,

Plaintiff contends that it was not authorized to appoint a substitute trustee to foreclose

upon her home.  See Compl., at ¶¶ 50-51.

---

[4]    Presumably, this is because Plaintiff's original creditor was Washington Mutual Bank, FA ("WaMu"), who is named as the Lender on the Note.  See Compl., at ¶ 7.

[5]    In an analogous case, this Court has rejected such threadbare allegations absent a factual predicate to support such claim.  For example, in Sunga v. Rees Broome, P.C., 2010 U.S. Dist. Lexis 25590, *9-10 (E.D. Va. Mar. 18, 2010), in the context of rejecting allegations that a law firm misrepresented the amount owed,  the Court explained:

> The relevant section of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff provides no factual support in the Complaint other than the mere conclusory legal assertions that she believes these amounts are false. The Complaint does not provide any factual support as to why and how the amount included in the statement of account is, in fact, "false," "deceptive" or "misleading." Thus, even accepted as true, Plaintiff's threadbare allegations without any factual support simply do not state a claim to relief." Iqbal, 129 S.Ct. at 1949; Dikun v. Streich, 369 F.Supp.2d 781, 787 (E.D. Va. 2005) ("In analyzing a motion to dismiss, conclusory allegations regarding the legal effect of the facts alleged need not be accepted.") (internal citation omitted). Accordingly, the Court will grant Defendant's Motion to Dismiss Counts II and III of the Complaint."

Sunga, 2010 U.S. Dist Lexis 25590 at *9-10.  Here, comparatively, no factual predicate is plead as to whom Plaintiff claims is her creditor.

Such assertions are plainly false. As Plaintiff's counsel is well aware, Chase purchased the assets of WaMu in 2008. See In re Fed. Home Loan Mortg. Corp. Derivative Litig., 643 F. Supp. 2d 790, 794 (E.D. Va. 2009); see also note 2, supra, accord FDIC Press Release PR-85-2008, JPMorgan Chase Acquires Banking Operations of Washington Mutual FDIC Facilitates Transaction that Protects All Depositors and Comes at No Cost to the Deposit Insurance Fund (September 25, 2008) http://www.fdic.gov/news/news/press/2008/pr08085.html attached hereto as Exhibit A.[6] At that time "JP Morgan Chase acquired the assets, assumed the qualified financial contracts and made a payment of $1.9 billion." Id. This asset purchase occurred more than two years before Defendants allegedly began trying to collect the debt, or before any Plaintiff's default under the loan.

Accordingly, the premise that Chase was not the proper creditor of the note is not plausible. Because this threadbare premise is the foundation upon which plaintiff builds Counts I and II, both counts fail as a matter of law and must be dismissed with prejudice.

**B.     As a loan servicer, Chase would still have been properly named the Plaintiff's creditor pursuant to the FDCPA.**

Plaintiff theorizes that Chase was incorrectly identified as her creditor on SBA's January 11, 2012 letter. See Compl. at ¶ 45. As discussed above, this speculation is erroneous. However, even if Plaintiff were correct that Chase was only her loan servicer, her claims fail because a loan servicer such as Chase is properly identified as the creditor under the FDCPA.

---

[6]     Although, the acquisition of WaMu by Chase is not part of the Complaint, the Court may take judicial notice of the purchase as it is a matter of public record. See Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. N.C. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record." citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)).

As an initial matter, a loan servicer typically is a "creditor," and not a debt collector. This is because loan servicers obtain regular payments from consumers. Federal law describes these servicing responsibilities to include,

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan… and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

12 U.S.C. 3500.2(b); see also Larota-Florez, 719 F. Supp. 2d at 640-41 ("As servicer, Litton has the *right to collect payments* on behalf of the holder and the right to foreclose upon default.") (emphasis added); CWCapital Asset Management, LLC v. Chicago Properties, LLC, 610 F.3d 497, 500 (7th Cir. 2010) (explaining the necessary role of servicers: "[e]very mortgage needs someone to collect the borrower's monthly payments of principal and interest; make sure the property is properly insured; attend to any default, either by suing the borrower and if necessary foreclosing the mortgage or by modifying the mortgage to make its terms less onerous to the borrower; and discharge the mortgage when it is paid off[.]").

Further, a "creditor" pursuant to the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Notably, the FDCPA does not define creditor to be the owner of the loan. Therefore, assignees who obtained their rights prior to a default are – by statute – included in the definition of "creditor." See 15 U.S.C. § 1692(a)(4). Even cases that determine that the

identification of "creditor" corresponds to the FDCPA's definition as to who is subject to its provisions, those cases provide that a servicer's status as a "creditor" or a "debt collector" turns on the loan's default status at the time it acquires its servicing rights.  See Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012).

Here, Plaintiff has not alleged that her loan was in default when Chase obtained its servicing rights.  Accordingly, Chase must be a "creditor" within the meaning of the FDCPA.  See Martin v. Select Portfolio Servicing, 2008 U.S. Dist. Lexis 16088, at *9 (S.D. Ohio Mar. 3, 2008) ("[a]n entity which does not own the loan but merely 'services' the loan is treated as a 'creditor' and generally is not subject to the FDCPA." (citations omitted)); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir. 1996) (where debt was assigned for servicing before default of the loan, assignee is exempt from the Act because the assignee becomes a creditor and is collecting its own debt); Bilal v. Chase Manhattan Mort. Corp., 2006 U.S. Dist. Lexis 39040, at *9-11 (N.D. Ill. June 13, 2006) (granting mortgage servicer's motion to dismiss because the servicer was a creditor, not a debt collector, under the FDCPA); Glazer v. Chase Home Fin., LLC, 2009 U.S. Dist. Lexis 126369, at *20-21 (N.D. Ohio Jan. 21, 2010) ("Therefore, Chase, as the servicer prior to default, should be treated as a 'creditor' and not subject to the FDCPA."); Gomez v. GMAC Mortg., LLC, Nos. 10-13287, 10-13288, 10-13442, 2010 U.S. Dist. Lexis 140626, 2010 WL 5625673, at *3 (E.D. Mich. Dec. 15, 2010) ("From the mortgage documents provided by GMAC, it is apparent that Amera was the mortgage originator, GMAC was the mortgage servicer, and MERS was the mortgagee, which means that these Defendants are creditors, not debt collectors.").

At least five courts of appeals have agreed with this conclusion.  See Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012); Carter v. AMC, LLC, 645 F.3d 840, 843 (7th Cir. 2011); Bailey v. Security National Servicing Corp., 154 F.3d 384, 387-88 (7th Cir. 1998); Alibrandi v. Financial Outsourcing Servicing, Inc., 333 F.3d 82, 84-85 (2d Cir. 2003); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir. 1996); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).  As the Seventh Circuit clearly stated, "although one usually 'obtains' a debt by purchasing it, that is not the only way to do so.  A servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another."  Carter, 645 F.3d at 844.

Thus, Chase – as a servicer who acquired its rights when the Loan was not in default – was not only tasked by federal law to collect loan payments from the Plaintiffs, but also "obtained" the debt from the debt's owner and had the right to bring suit to collect the debt in its own name.  Because Chase is the undisputed entity to whom Plaintiff is obligated to pay her mortgage debt, Chase fits the FDCPA's definition of creditor.[7]  Accordingly, Defendants cannot be liable for violations of the FDCPA based on SBA's letter identifying Chase as the creditor.

---

[7]      Indeed, even if Chase did not fit the definition of a "creditor" under the FDCPA (which it does), Plaintiff's related claim under 15 U.S.C. § 1692e would still fail because Plaintiff does not contend that Defendants' identifying the loan servicer as her creditor was a material misrepresentation that mislead her in any way.  As explained more fully infra, the requirement of materiality applies to claims such as here, which are advanced pursuant to 15 U.S.C. § 1692e.  See Warren v. Sessons & Rogers, P.A., 2012 U.S. App. Lexis 552, at *18-19 (4th Cir. 2012).

**C.     Even if Chase was merely a loan servicer, and not the owner of the Note, such status is sufficient under Virginia law to authorize it to appoint a substitute trustee.**

Plaintiff contends that Chase was not authorized, and did not validly appoint PFC as substitute trustee, and, therefore, by pursuing foreclosure, Defendants violated 15 U.S.C. 1692f(6). See Compl. at ¶¶ 50-51. Although Plaintiff admits that Chase is her loan servicer, she claims that PFC's appointment is invalid because "they were not acting on behalf of the actual beneficiary of the deed of trust and/or Noteholder." Compl., at ¶ 50. To the extent Plaintiff insinuates that only the owner of a loan could appoint trustees and foreclose, such contention is contradicted by Virginia law.[8]

Rather, Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, see Va. Code §55-59(9),[9] including any nominee of the lender, see Tapia v. United States Bank, N.A., 2010 U.S. Dist. Lexis 62448, at *19-20 (E.D. Va. June 22, 2010), the noteholder or its agent, see Horvath v. Bank of N.Y., 641 F.3d 617 (4th Cir. 2011), the loan servicer, see Larota-Florez v. Goldman Sachs Mortgage Co., 719 F. Supp. 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011), or a non-holder in possession with rights of holder.

---

[8]     And, indeed, irrelevant as Chase did own the note.

[9]     "The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. The instrument of appointment shall be recorded in the office of the clerk wherein the original deed of trust is recorded prior to or at the time of recordation of any instrument in which a power, right, authority or duty conferred by the original deed of trust is exercised." Va. Code § 55-59(9) (2012).

See Va. Code 8.3A-301(ii); Va. Code 8:3A-203(b).[10]   Indeed, even if the loan servicer is

not the holder of the subject note, it "is still authorized under the contract and agency law,

to initiate foreclosure proceedings on the Property."   Rosales v. Countrywide Home

Loans, Loudoun Co. Cir. Ct. Case No. 54255, at 6-7 (2010) (attached hereto as Exhibit

B).[11]

This Court has reached the same conclusion, finding that loan servicers are

authorized to foreclose on property secured by loans that they service on behalf of the

holder by virtue of the laws of both contract and agency.   See Larota-Florez, 719

F.Supp.2d at 640-41 ("As servicer, Litton has the right to collect payments on behalf of

the holder and the right to foreclose upon default.   Therefore, Litton's appointment of

Professional as substitute trustee under the Deed of Trust was authorized as a matter of

contract and agency law.") (emphasis added); cf. Sprint Communs. Co., L.P. v. APCC

Servs., 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has

standing to pursue that claim in federal court, even when the assignee has promised to

remit the proceeds of the litigation to the assignor, and noting that operators assigned

---

[10]   Generally, the terms of industry standard promissory notes secured by residential
real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who
is entitled to receive payment is called the 'noteholder,'" which would allow enforcement
by a non-holder in possession with rights of a holder.   See Va. Code 8.3A-301(ii); Va.
Code 8.3A-203(b).

[11]   The Supreme Court of Virginia, in denying Mr. Rosales appeal of the
aforementioned determination, explained that "[u]pon review of the record in this case
and consideration of the argument submitted in support of and in opposition to the
granting of an appeal, the Court is of the opinion there is no reversible error in the
judgment complained of.   Accordingly, the Court refuses the petition for appeal." Pedro
Rosales v. Countrywide Home Loans n/k/a Bank of America Mortgage, Supreme Ct. of
Virginia Record No. 102289 (Apr. 12, 2011) (emphasis added); see Ex. B.

their claims lock stock, and barrel, and precedent makes clear that an assignee can sue based on his assigner's injuries.").

On the face of her Complaint, Plaintiff clearly states that Chase is her loan servicer.  See Compl. at ¶ 9.  She alleges no facts to support the notion that Chase was not authorized as a servicer to initiate and prosecute the foreclosure action.  Rather, she selectively quotes from a January 11, 2012 letter, without disclosing that the letter indicates that Defendants were furnishing her a copy of the original promissory note that Defendants obtained from Chase, which it had in its possession.  A copy of the letter is attached as Exhibit C.  Thus, because Chase – even as servicer – was authorized to appoint a substitute trustee, Plaintiff's claim that Defendants violated the FDCPA must fail.

**D.     Plaintiff's claim that SBA falsely identified Chase as creditor is both incorrect and belied by Chase's admitted status as loan servicer.  It cannot be, therefore, a material misrepresentation that caused Plaintiff any damage.**

Plaintiff also claims that SBA violated 15 U.S.C. § 1692e by "falsely" identifying Chase as the creditor in January 2012 correspondence.  As set forth more fully above, because Plaintiff does not dispute that Chase is the loan servicer, her contention fails. Chase, as the admitted loan servicer, is the proper party to whom payments are to be made and to whom payments are owed.  See Compl., at ¶ 9.  Indeed, Chase is the entity with whom Plaintiff "diligently communicated. . . and submitted documents after documents in efforts to keep her home[.]"  Compl., at ¶ 12.  Because Chase is the entity to whom Plaintiff is obligated to pay her mortgage debt, Chase falls within the FDCPA's definition of a creditor and any representation that Chase is the creditor could not be a misrepresentation under the FDCPA.

To determine whether the text of a letter violates the FDCPA, the Fourth Circuit applies the "least sophisticated consumer" standard.  See Morgan v. Credit Adjustment Bd., 999 F. Supp. 803, 805 (E.D. Va. 1998). "While protecting naive consumers, the [least sophisticated consumer] standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding …." Id.  In accordance with this standard, the "creditor to whom the debt is owed" is simply the person to whom the debtor is required to make payments.  This interpretation is consistent with an unsophisticated consumer's understanding of the mortgage lending industry, as well as the purpose of including the name of the creditor to whom the debt is owed in the letter, which is specifically to permit a debtor to make-up for his delinquency.  See, e.g., Luzinski v. Arrow Fin. Servs., LLC., No. 05-cv-1322, 2007 U.S. Dist. LEXIS 71788, at *3 (E.D. Wis. Sept. 26, 2007) (dismissing plaintiff's claims holding a dunning letter that identifies the servicer to whom the debtor's payments are made does not violate the FDCPA).

Consistent with the express purpose of the FDCPA to eliminate deceit and confusion of consumers, courts have held that the debt collector is not required to follow the FDCPA language blindly when such blind or hyper-technical compliance results in meaningless and confusing representations to consumers. See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 323 F. Supp. 2d 1344, 1348-1349 (N.D. Ga. 2003) (concluding that an "an offer to provide information about a non-existent original creditor would in itself be a violation of the FDCPA because it would mislead consumers"); accord Volden v. Innovative Fin. Sys., 440 F.3d 947, 956 (8th Cir. S.D. 2006) (holding that the debt collector did not violate FDCPA when it failed to include the required

disclosures regarding the name and address of the original creditor because the inclusion of the FDCPA-required language would be "technical," "meaningless," and "would have provided absolutely no useful information [to the consumer]").

Moreover, any such alleged misrepresentation cannot have been material and Plaintiff does not allege that she suffered any damages as a result. Indeed, Plaintiff fails to assert that she in any way relied on the alleged misrepresentation to her detriment. Instead, she continued to deal with Chase as her creditor and never disputed Chase's right to collect the debt. Thus, even if the statement was false, the alleged misrepresentation that Chase was the creditor – which it was – is immaterial. Accordingly, Plaintiffs claim that Defendants violated the FDCPA should be dismissed with prejudice.

**E.    Plaintiff fails to allege any facts supporting her claim that SBA made improper or illegal contact with Plaintiff.**

In Count III of the Complaint, Plaintiff contends that Defendants violated 15 U.S.C. §1692c(a)(2) by communicating with her when Defendants knew she was represented by counsel. See Compl., at ¶¶ 55-56. Plaintiff premises this allegation on one pre-foreclosure letter sent by SBA dated March 6, 2012. See Compl., at ¶¶ 35-39 (attached hereto as Exhibit D). Because SBA was required by Virginia law to send the letter as a condition to foreclosing on the loan, this claim must fail. See Vitullo v. Mancini, 684 F. Supp. 2d 747, 758-759 (E.D. Va. 2010); see also Hooks v. Forman Holt Eliades & Ravin LLC, 2012 U.S. Dist. Lexis 115089 (S.D.N.Y. 2012) ("Ultimately, the Court may presume without deciding Defendants' knowledge of Plaintiff's representation by counsel on this motion, because with or without such knowledge, the Notice does not violate section 1692c as a matter of law.").

14

Indeed, "a creditor's pursuit of legal remedies, such as non-judicial foreclosure statutes, does not violate the cease communications rule of the FDCPA." <u>Vitullo</u>, 684 F. Supp. 2d, at 758.[12] This is because the "FDCPA does not prohibit debt collectors from foreclosing on debtors' properties pursuant to state law, and nothing in the FDCPA authorizes debt collectors to violate or fail to comply with state foreclosure laws." <u>Id</u>. (<u>citing Hulse v. Ocwen Fed. Bank, FSB</u>, 195 F. Supp. 2d 1188, 1210-11 (D. Or. 2002).

In Virginia, a trustee or secured party is required to give "written notice of date and place of any proposed sale in execution of a deed of trust, which notice shall include either (i) the instrument number or deed book and page numbers of the instrument of appointment filed pursuant to § 55-59, or (ii) said notice shall include a copy of the executed and notarized appointment of substitute trustee by personal delivery or by mail to (i) the present owner of the property to be sold at his last known address as such owner." Va. Code § 55-59.1(A).

The letter sent on March 6, 2012 was sent pursuant to Virginia Code § 55-59.1 and included the notice of foreclosure sale. <u>See</u> Ex. D.  Nothing in the letter demanded payment or made any sort of threat that could form the basis of a FDCPA claim. <u>See</u> <u>Blick v. Wells Fargo Bank, N.A.</u>, 2012 U.S. Dist. LEXIS 41266, *26-27 (W.D. Va. Mar. 27, 2012).  Rather, Defendants notified Plaintiff of the time and location of the foreclosure sale and attached the necessary information as required by law. <u>See</u> Va. Code § 55-59.1(A).

---

[12]     In <u>Vitullo</u>, the Court also cited the Federal Trade Commission Report that "cease communications provision in section 1692c(a) of the FDCPA does not prevent collectors or creditors from filing suit against the consumer, and thus would not foreclose pursuit of state foreclosure remedies." <u>Vitullo</u>, 684 F. Supp. 2d at 758-759.

The circumstances of this case are very similar to those of <u>Blick v. Wells Fargo Bank, N.A.</u>.  In that case, the defendants "neither made an express demand for payment nor provided Plaintiffs with any information regarding who was claiming current ownership of the debt or how the debt could be satisfied. On the contrary, BGWW's notice to Plaintiffs merely informed Plaintiffs that a foreclosure would proceed 14 days from the date of the letter's mailing, and alerted Plaintiffs that they could petition the circuit court if they believed they may be subject to a claim by a person other than the Beneficiary to enforce the note and the deed of trust."  <u>Blick</u>, 2012 U.S. Dist. LEXIS 41266, at *26-27 (<u>citing</u> <u>Blagogee v. Equity Trs., LLC</u>, No. 1:10-CV-13, 2010 U.S. Dist. LEXIS 114233, 2010 WL 2933963, at *5 (E.D. Va. July 26, 2010)).  For this reason, the court found that defendants' letter was not "an attempt to collect a debt for purposes of the FDCPA" and that the plaintiffs "failed to plead sufficient facts that would allow their claims to go forward."  <u>Id</u>.  Thus, the FDCPA claims against defendants were dismissed.  <u>See</u> <u>id</u>.

Defendants did nothing more than they were required by law to do.  Accordingly, this letter cannot form the basis of a claim under 15 U.S.C. § 1692c and Count III must be dismissed with prejudice.

### CONCLUSION

For the reasons set forth more fully above, the Complaint fails state a claim upon which relief can be granted as to either Defendant.  Therefore, Defendants Shapiro, Brown & Alt, LLP and Professional Foreclosure Corporation of Virginia respectfully request that the Complaint be dismissed with prejudice, that it be awarded its fees in this action, and for such other relief as may be just and proper.

Respectfully submitted,
**SHAPIRO, BROWN & ALT, LLP**
**PROFESSIONAL FORECLOSURE**
**CORPORATION OF VIRGINIA**
*By Counsel*

Dated: February 19, 2013

*/s/ Bizhan Beiramee*
Bizhan Beiramee (VSB #50918)
Beiramee Law Group, PC
7508 Wisconsin Avenue, Second Floor
Bethesda, Maryland 20814
(703) 483-9600 (telephone)
(703) 483-9599 (facsimile)
bbeiramee@beiramee.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Dale Wood Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
703-277-9774
Fax: 703-591-9285
Email: kkelly@siplfirm.com

Leonard Anthony Bennett, Esq.
Susan Mary Rotkis, Esq.
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@cox.net
Email: srotkis@clalegal.com

Matthew James Erausquin, Esq.
Consumer Litigation Associates
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-273-6080
Fax: 888-892-3512
Email: matt@clalegal.com

*/s/ Bizhan Beiramee*
Bizhan Beiramee